T.C. Memo. 2003-181


UNITED STATES TAX COURT


MICHAEL T. HAWKINS AND JANINE M. HANSEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10747-01.                    Filed June 20, 2003.


Michael T. Hawkins and Janine M. Hansen, pro sese.

Alan J. Tomsic, for respondent.


MEMORANDUM OPINION

WOLFE, Special Trial Judge:  This matter is before the Court
on petitioners' Motion to Dismiss for Lack of Jurisdiction,
respondent's Motion for Summary Judgment, and respondent's Motion
to Impose a Penalty under Section 6673.  Unless otherwise
indicated, all section references are to the Internal Revenue
Code in effect for the years in issue, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

## Background

Petitioners failed to file Federal income tax returns for 1997, 1998, and 1999. On May 25, 2001, respondent issued to each petitioner a notice of deficiency for those years. Relying on Forms W-2, Wage and Tax Statement, and Forms 1099 information, respondent determined deficiencies in petitioners' Federal income taxes as follows:

### Michael T. Hawkins

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| --- | --- | --- | --- |
| 1997 | $8,291.00 | $1,074.75 | $206.27 |
| 1998 | 7,852.00 | 1,621.75 | 289.88 |
| 1999 | 8,435.80 | 1,311.20 | 236.68 |

### Janine M. Hansen

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| --- | --- | --- | --- |
| 1997 | $1,255.00 | $313.75 | -- |
| 1998 | 848.00 | 212.00 | -- |
| 1999 | 848.00 | 212.00 | -- |

Petitioners resided in Sparks, Nevada, on August 23, 2001, when they timely filed their petition.

On October 12, 2001, respondent filed an Answer. On March 15, 2002, respondent then filed a Motion for Summary Judgment (summary judgment motion). On April 22, 2002, petitioners filed a Response to Motion for Summary Judgment (response to summary judgment motion) and a Motion to Dismiss for Lack of Jurisdiction (jurisdiction motion). The Court heard the motions together, and at the conclusion of the hearing respondent made an oral Motion to Impose a Penalty under Section 6673 (penalty motion). The parties did not enter into a stipulation of facts.

## Discussion

### I.  Jurisdiction Motion

We consider the jurisdiction motion first because our jurisdiction is prerequisite to any other action we may take. The jurisdiction of this Court is governed by statute.  Sec. 7442.  For a taxpayer to maintain an action in this Court there must be a valid notice of deficiency and a timely filed petition. Rule 13(a), (c); Monge v. Commissioner, 93 T.C. 22, 27 (1989); Abeles v. Commissioner, 91 T.C. 1019, 1025 (1988).

In the jurisdiction motion, petitioners do not dispute that respondent issued a notice of deficiency to each of them for each of the years in issue, and they do not dispute that the petition they filed was timely.  Instead, petitioners contend:  (1) That Rules 24 and 200, governing appearance and practice of counsel before the Court, violate the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. 103-141, sec. 2, 107 Stat. 1488, currently codified at 42 U.S.C. secs. 2000bb to 2000bb-4 (2000); (2) that petitioners are not "taxpayers" subject to the jurisdiction of this Court; and (3) that the issues raised in the jurisdiction motion, including petitioners' claim of constitutional entitlement to a jury trial, can be decided only by an Article III court.

### A.  Rules 24 and 200 Do Not Violate RFRA

Section 7453 provides generally that "the proceedings of the Tax Court * * * shall be conducted in accordance with such rules of practice and procedure (other than rules of evidence) as the

Tax Court may prescribe".  Accordingly, this Court has "over many years developed a comprehensive set of Rules which are designed and calculated to increase our efficiency in adjudicating genuine tax disputes."  Blum v. Commissioner, 86 T.C. 1128, 1131 (1986).[1]

Rule 24(a)(4) provides:

> No entry of appearance by counsel not admitted to practice before this Court will be effective until counsel shall have been admitted, but counsel may be recognized as counsel in a pending case to the extent permitted by the Court and then only where it appears that counsel can and will be promptly admitted.  For the procedure for admission to practice before the Court, see Rule 200.

Rule 200 restricts admission to practice before the Tax Court to two classes of persons:  (1) Attorneys in good standing of the Bar of the Supreme Court of the United States, or of the highest or appropriate court of any State or of the District of Columbia, or any commonwealth, territory, or possession of the United States; and (2) applicants, not attorneys at law, who pass a written examination given by the Tax Court as well as an additional oral examination if required by the Court.  This Court has stated: "The requirement that only qualified persons are permitted to represent litigants before this Court is for the protection of litigants by insuring that only persons able to properly represent a party appear for him."  Cupp v.

---

[1] Section 7452 specifically provides that the taxpayer shall be represented in accordance with the Rules of Practice and Procedure prescribed by this Court.  See sec. 301.7452-1, Proced. & Admin. Regs.  Section 7452 further provides that "No qualified person shall be denied admission to practice before the Tax Court because of his failure to be a member of any profession or calling."

Commissioner, 65 T.C. 68, 85 (1975), affd. without published opinion 559 F.2d 1207 (3d Cir. 1977). Petitioners argue that the requirements of Rule 24(a)(4) and Rule 200 conflict with their religious rights under RFRA, that these Rules are invalid, and that, therefore, this Court lacks jurisdiction.

Congress enacted RFRA in response to Employment Div. v. Smith, 494 U.S. 872 (1990).[2] In Smith, the Supreme Court held that valid neutral laws of general applicability do not violate a person's religious rights even when the law is not supported by a compelling governmental interest. See id.; Adams v. Commissioner, 110 T.C. 137, 138 (1998), affd. 170 F.3d 173 (3d Cir. 1999). Prior to Smith, the Government had to demonstrate that the application of such laws to religious practices was "essential to accomplish an overriding Governmental interest" or represented "the least restrictive means of achieving some compelling state interest." Employment Div. v. Smith, supra at 899 (O'Connor, J., concurring in judgment); see also Adams v. Commissioner, supra at 138.

RFRA restores the compelling interest test used prior to Smith by prohibiting the Government from imposing a substantial burden on the free exercise of religion unless it demonstrates

---

[2] In City of Boerne v. Flores, 521 U.S. 507, 536 (1997), the Supreme Court held that the Religious Freedom Restoration Act of 1993 (RFRA), Pub. L. 103-141, sec. 2, 107 Stat. 1488, currently codified at 42 U.S.C. secs. 2000bb to 2000bb-4 (1994), was unconstitutional as applied to State and local laws. Although neither party has raised the issue, we note that RFRA has since been upheld as constitutional as applied in the Federal realm. See Guam v. Guerrero, 290 F.3d 1210, 1221 (9th Cir. 2002).

that application of the burden is the least restrictive means of achieving a compelling governmental interest.[3]  See 42 U.S.C. sec. 2000bb-1(b); Adams v. Commissioner, supra.  In evaluating whether the Government has met the compelling interest test, cases decided prior to Smith are applicable, and the test "should not be construed more stringently or more leniently than it was prior to Smith."  Adams v. Commissioner, supra at 139.

1.  Substantial Burden

To establish a violation under RFRA, a claimant must first show that the Government "substantially burdened" his or her free exercise of religion.  42 U.S.C. sec. 2000bb-1(a).  A statute burdens the free exercise of religion if it "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs".  Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981).  A substantial burden must be more than an

---

[3]  In addition to the compelling interest test provided for by RFRA, petitioners rely on Miller v. Reed, 176 F.3d 1202, 1207 (9th Cir. 1999), to assert a hybrid-rights claim and apply a strict scrutiny analysis.  In Employment Div. v. Smith, 494 U.S. 872, 881-882, (1990), the Supreme Court excepted a hybrid-rights claim from its rational basis analysis and thus recognized the applicability of the strict scrutiny analysis where a law "[involves] not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections".  Petitioners' argument for strict scrutiny analysis here amounts to a request for application of the compelling interest test set forth by RFRA.  See, e.g., Hill v. Colorado, 530 U.S. 703, 748 (Scalia, J., dissenting)(2000), (referring to "that stringent mode of constitutional analysis our cases refer to as 'strict scrutiny,' which requires that the restriction be narrowly tailored to serve a compelling state interest.");  see also Kessler v. Commissioner, 87 T.C. 1285, 1290 (1986), affd. 838 F.2d 1215 (6th Cir. 1988).

inconvenience.  Guam v. Guerrero, 290 F.3d 1210, 1222 (9th Cir. 2002) (citing Worldwide Church of God v. Phila. Church of God, Inc., 227 F.3d 1110, 1121 (9th Cir. 2000)).[4]

Petitioners present mere summary assertions that Rules 24 and 200 substantially burden their right to free exercise of religion and fail to identify any aspect of their religion that has been violated.  At the hearing, petitioners sought to have a religious adviser enter an appearance as their counsel.  This person was not an attorney, nor had he established his qualifications by passing a written examination given by the Tax Court, and the Court would not accept his formal appearance.  Nevertheless, the Court allowed petitioners' religious adviser to confer with petitioners at regular intervals throughout the proceedings and to sit at petitioners' counsel desk.  Petitioners stated that they had spoken with an attorney regarding this matter, that the attorney was a member of the bar of the State of Nevada, but that the attorney would have refused to pay the fee

---

[4]  RFRA originally defined the term "exercise of religion" as "the exercise of religion under the First Amendment to the Constitution".  42 U.S.C. sec. 2000bb-2(4)(1994).  The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), Pub. L. 106-274, 114 Stat. 803-807, currently codified at 42 U.S.C. secs. 2000cc to 2000cc-5 (2000), amended certain provisions of RFRA, including the definition of "exercise of religion".  RLUIPA secs. 7(a)(3), 8(7)(a).  RLUIPA amends RFRA so that "exercise of religion" now means "religious exercise, as defined in section 2000cc-5 of this title."  42 U.S.C. sec. 2000bb-2(4) (2000). "Religious exercise", for purposes of RFRA, is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  RLUIPA, 42 U.S.C. sec. 2000cc-5(7)(A).

required to appear before the Court.  Nevertheless, the attorney was not present at the hearing.

On this record, we find that Rules 24 and 200 did not place a substantial burden on petitioners' exercise of religion.  Those Rules did not put substantial pressure on petitioners to modify their behavior and to violate their beliefs.  At most, petitioners claim only that they may have been inconvenienced in their search for an attorney who shares their religious beliefs.[5] Rules 24 and 200 did not at any time interfere with petitioners' observance of their religion.  Moreover, none of petitioners' constitutional rights have been violated.  Petitioners represented themselves pro sese before the Court.  They had the benefit of the advice of their religious adviser, and they had ample opportunity to have their case heard.  See Cupp v. Commissioner, supra; Ruggere v. Commissioner, 78 T.C. 979, 989 (1982).

Rules 24 and 200 do not violate RFRA's substantial burden test.  Nevertheless, even if we were to determine that Rules 24 and 200 did substantially burden petitioners' free exercise of

---

[5]  Petitioners are members of both the Church of Jesus Christ of Latter Day Saints and the First Christian Fellowship of Eternal Sovereignty.  Petitioners have presented no evidence suggesting that members of the Church of Jesus Christ of Latter Day Saints, a large and prominent religious denomination, are not represented in the bar of this Court.  Petitioners have introduced into evidence the Testament of Sovereignty with respect to beliefs of the First Christian Fellowship of Eternal Sovereignty, but have failed to show how Rules 24 and 200 interfere with their exercise of religion as described therein.

religion, respondent has satisfied the compelling interest test.

2. <u>Compelling Governmental Interest Test</u>

In cases where the claimants' rights have been substantially burdened, the Government may impose a substantial burden on the free exercise of religion if it demonstrates that the application of the burden (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling interest. 42 U.S.C. sec. 2000bb-1(b); see <u>Miller v. Commissioner</u>, 114 T.C. 511, 516 (2000). In addition to holding that Rules 24 and 200 do not violate the substantial burden test of the RFRA, we conclude that respondent satisfies the compelling interest and least restrictive means test.

Respondent's interest in administering the tax system properly is a compelling governmental interest. See, e.g., <u>Hernandez v. Commissioner</u>, 490 U.S. 680, 699-700 (1989)("[E]ven a substantial burden would be justified by the 'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious beliefs.'" (quoting <u>United States v. Lee</u>, 455 U.S. 252, 260 (1982))). This Court has stated:

> the Supreme Court has established that uniform, mandatory participation in the Federal income tax system, irrespective of religious belief, is a compelling governmental interest. * * * As a result, requiring petitioner's participation in the Federal income tax system is the only, and thus the least restrictive, means of furthering the Government's interest. * * * [Citations omitted.]

<u>Adams v. Commissioner</u>, <u>supra</u> at 139; see <u>Hernandez v. Commissioner</u>, <u>supra</u>; <u>United States v. Lee</u>, <u>supra</u>.

Rules 24 and 200 exist for the protection of the litigants practicing before the Court and contribute to the fair and orderly trial of tax matters. Since the Tax Court is an integral part of the Federal income tax system, the Government has a compelling interest in the administration of the whole tax system, including its trials. See United States v. Turnbull, 888 F.2d 636, 640 (9th Cir. 1989) (holding that the Government's compelling interest in a fair and orderly trial, in criminal proceedings relating to a failure to pay Federal income taxes, outweighed the taxpayer's wish, contrary to the rules of the court, to be represented by a lay person who shared his religious beliefs). We hold that the Government has a compelling interest in the fair and orderly trials of this Court, which are important to the maintenance and the administration of a sound tax system. Rules 24 and 200 are an integral part of the least restrictive means of achieving that interest. Accordingly, Rules 24 and 200 do not violate RFRA.

B.  Remaining Contentions Concerning Jurisdiction

The remaining contentions with respect to jurisdiction raised by petitioners are shopworn, frivolous assertions that "we perceive no need to refute * * * with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit." Crain v. Commissioner, 737 F.2d 1417, 1417 (5th Cir. 1984). Nevertheless, we briefly address at least some of petitioners' contentions and dispose of them expeditiously.

First, petitioners are taxpayers subject to the Federal income tax. See secs. 1(c), 7701(a)(1), (14); United States v. Studley, 783 F.2d 934, 937 (9th Cir. 1986). Their income from labor or services as reported on their Form W-2 statements and Forms 1099 constitutes income subject to Federal income tax. See secs. 1(a)(1), 61(a); Craig v. Commissioner, 119 T.C. 252, 263 (2002).

Second, the United States Tax Court is a legislative court established under Article I of the United States Constitution. Sec. 7441. It has jurisdiction to determine the correct amount of a deficiency. Sec. 6214. The constitutionality of the Tax Court repeatedly has been upheld on the basis of congressional authority to create specialized courts under Article I of the Constitution. Freytag v. Commissioner, 501 U.S. 868, 890-891 (1991); Rowlee v. Commissioner, 80 T.C. 1111, 1114 (1983); Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 394 (1971). Petitioners contend that only a court established under Article III of the Constitution, rather than a legislative court established under Article I of the Constitution, can adjudicate the issues they have raised.[6] Petitioners' arguments have no

---

[6] Petitioners' reliance on the statutory language of RFRA is erroneous. RFRA provides:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a Government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. sec. 2000bb-1(c)(emphasis added). RFRA merely applies the constitutional parameters of "standing" to any alleged

(continued...)

merit.

Third, it is well established that there is no constitutional right to a jury trial in a suit concerning Federal tax liability in the Tax Court.  Dawn v. Commissioner, 675 F.2d 1077, 1079 (9th Cir. 1982), affg. T.C. Memo. 1979-479; Rowlee v. Commissioner, supra; Cupp v. Commissioner, 65 T.C. at 86 ("where a taxpayer takes advantage of the procedure of filing a petition in the Tax Court without payment of the tax, any deprivation of a jury trial is due to his own act").

For the foregoing reasons, petitioners' jurisdiction motion will be denied.

## II.  Summary Judgment Motion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Pope & Talbot, Inc., & Subs. v. Commissioner, 104 T.C. 574, 575 (1995).  Rule 121(a) provides that either party may move with or without supporting affidavits, for summary judgment upon all or any part of the legal issues in controversy.  Under Rule 121(b) decision shall thereafter be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  See O'Neal v.

---

6(...continued)
violation of the statute.  The Tax Court clearly has jurisdiction to hear an RFRA challenge.  See, e.g., Adams v. Commissioner, 110 T.C. 137, 138 (1998), affd. 170 F.3d 173 (3d Cir. 1999).

Commissioner, 102 T.C. 666, 674 (1994) (quoting Kroh v.

Commissioner, 98 T.C. 383, 389 (1992)).

The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be made in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). The nonmoving party, however, must do more than merely allege or deny facts in its pleadings and must "set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party." Rule 121(d); FPL Group, Inc. v. Commissioner, 115 T.C. 554, 559 (2000).

Petitioners assert in their response to the summary judgment motion that respondent has:

> acted in an invidious and/or covert manner * * * to reduce, restrict and eventually eliminate all God given rights guaranteed by the Constitution and also privileges granted by the Constitution specifically or even generally so the Governments could establish a civil/socialist/secular/irreligion religion and Government that are diametrically opposed to Christianity and Christian liberty as originally established in the Constitution and Bill of Rights which are both integral parts of the religions of the Petitioners. * * * And for all these reasons and more the Petitioners challenge the appropriateness of collection actions; and/or existence of amount of the tax.

Petitioners, through the petition, response to summary judgment motion, and oral argument, assert the following general issues: (1) Whether respondent's adjustments are barred; (2) whether the alleged deficiencies are in violation of RFRA; (3) whether petitioners have been denied due process; (4) whether respondent

filed the summary judgment motion timely; (5) and whether the representative of respondent has legal authority to act on behalf of respondent. Petitioners, though, do not present the Court with any specific facts showing any genuine issue for trial despite this Court's express requirement for such a showing. See Rule 121(d). Petitioners' repeated assertions of the existence of questions of fact are insufficient and without foundation, and we conclude that this case is appropriate for summary judgment.

## A. Respondent's Adjustments Are Sustained

## 1. Deficiencies

Gross income includes all income from whatever source derived. Sec. 61(a). Respondent's determinations in a notice of deficiency are presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners merely allege that respondent's determination of deficiencies in, and additions to, tax are incorrect. The arguments they put forward are frivolous and without merit.

Petitioners contend that the Individual Master File (IMF) for each petitioner has incorrect information and that they have no tax liability. Petitioners' contentions, however, are blanket statements, and they provide no support for their bare allegations that there are genuine issues for trial. Moreover, petitioners have not produced any information or set forth any specific facts to contradict the gross income reflected on petitioners' W-2 statements and 1099 forms. We hold that there is no genuine issue as to any material fact.

2.  <u>Additions to Tax Under Sections 6651(a) and 6654(a)</u>

Section 6651(a)(1) imposes an addition to tax for failure to file an income tax return.  The addition to tax may be avoided if the failure to file is due to reasonable cause and not willful neglect.  Sec. 6651(a).  "Reasonable cause" contemplates that the taxpayer exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time, <u>United States v. Boyle</u>, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs., and "willful neglect" means a conscious, intentional failure or reckless indifference, <u>United States v. Boyle</u>, <u>supra</u>.

Section 6654(a) imposes an addition to tax for failure to pay estimated tax.  The imposition of the addition to tax under section 6654 as to the years in question is mandatory when an individual fails to make the required estimated tax payments unless the petitioner falls within one of the exceptions set forth in the statute.  See sec. 6654(a), (e); <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20-21 (1980).

Petitioners do not offer any explanation that their failure to file was due to reasonable cause and not willful neglect.  The record demonstrates, rather, that petitioners chose not to file any returns in pursuit of what can only be regarded as a religious rights protest against the Federal income tax.  Petitioner Hawkins did not pay any estimated tax during the years at issue and did not show the applicability of any statutory exception under section 6654(e).  Petitioners have not assigned

error or provided any statement of fact to dispute respondent's determinations with respect to the additions to tax. Accordingly, respondent is entitled to summary adjudication as to the additions to tax in question.  Rule 34(b)(4), Swain v. Commissioner, 118 T.C. 358, 364-365 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

B.  The Federal Income Tax Does Not Violate RFRA

The gist of petitioners' response to the summary judgment motion, like the arguments made by petitioners in the jurisdiction motion, is that the Federal income tax violates RFRA.[7]  As previously discussed with respect to the jurisdiction motion, supra p. 9, the uniform mandatory participation in the Federal income tax system, irrespective of religious belief, is a compelling governmental interest.  Adams v. Commissioner, 110 T.C. 137, 139 (1998) (citing United States v. Lee, 455 U.S. 252, 260 (1982)).  Requiring petitioners' participation in the Federal income tax system is the only, and thus the least restrictive, means of furthering the Government's compelling interest.  Adams v. Commissioner, supra (holding that RFRA does not exempt a taxpayer from Federal income taxes).  Regardless of whether the

[7]  Specifically, petitioners assert that the Government of the United States, via respondent, has acted in "an invidious and/or covert manner to establish a religion and/or restrain the exercise of our [petitioners'] religion."  Petitioners also assert that the alleged taxes are an attempt to support religious activities or institutions and to compel petitioners to engage in "conduct and/or to refrain from religiously motivated activities we [petitioners] find objectionable."

petitioners' religious beliefs are substantially burdened, the Federal income tax system does not violate RFRA.[8]

C. <u>Remaining Contentions in Response to Summary Judgment Motion</u>

The remaining contentions raised by petitioners in the response to summary judgment motion are shopworn and frivolous assertions that do not deserve careful analysis. See <u>Crain v. Commissioner</u>, 737 F.2d 1417 (5th Cir. 1984).

First, as previously discussed, petitioners' contention that RFRA provides for this matter to be heard by an Article III court, and their argument about their right to a jury trial with respect to this case are without merit. See <u>supra</u> pp. 10-12.

Second, petitioners have not been denied due process. The provision of an administrative hearing before the Appeals division is not essential to the validity of a notice of deficiency and would have been futile since petitioners did not dispute the computation or amount of the tax. See <u>Cataldo v. Commissioner</u>, 60 T.C. 522, 523 (1973), affd. per curiam 499 F.2d 550 (2d Cir. 1974); see also <u>Corcoran v. Commissioner</u>, T.C. Memo.

---

[8] Petitioners contend that the least restrictive means of furthering the Government's compelling interest is to simply "waive" the determined deficiencies in, and additions to, tax. In support of their argument, petitioners rely on the unsubstantiated argument that during the previous years 1991, 1993, 1994, and 1995, respondent allegedly did not pursue any adjustments. Petitioners' argument, however, must fail because it is well settled that each taxable year stands on its own and must be separately considered. Respondent is not bound in any given year to allow the same treatment permitted in a previous year. <u>Pekar v. Commissioner</u>, 113 T.C. 158, 166 (1999). The circumstances of prior years are not relevant, and we consider only the taxable years at issue before this Court.

2002-18 (rejecting taxpayer's due process claims that the notice of deficiency was invalid and finding that an adminstrative hearing would have been futile because the taxpayers never disputed the actual amounts of the tax), affd. 54 Fed. Appx. 254 (9th Cir. 2002). The applicable provisions of the statute and regulations are clear, and petitioners have no basis to assert that they have been deprived of due process because their inquiries about requirements that they keep books and file tax returns allegedly have gone unanswered by the Internal Revenue Service. See secs. 6001, 6011(a); secs. 1.6001-1(a), 1.6011-1, Income Tax Regs. Petitioners are not denied due process simply because they are not in an article III court. See supra p. 11.

Third, respondent timely filed the summary judgment motion. Rule 121(a) states that a motion for summary judgment "may be made at any time commencing 30 days after the pleadings are closed". Respondent filed the Answer on October 12, 2001, and the summary judgment motion more than 5 months later on March 15, 2002. The pleadings in this case were closed long before respondent filed the summary judgment motion. See Rules 34, 36, 37, 38, 121.

Fourth, petitioners' contentions at the hearing that respondent's representative who prepared and issued the notices of deficiency lacked the legal authority to act in the name of respondent and petitioners' requiring proof of the delegation of authority from respondent are frivolous and without merit.

See Nestor v. Commissioner, 118 T.C. 162, 165 (2002).

In the absence of any valid issue for review, and for the foregoing reasons, we conclude that respondent is entitled to judgment as a matter of law sustaining each notice of deficiency issued to petitioners.

III. Penalty Motion

Section 6673(a)(1) authorizes this Court to require a taxpayer to pay to the United States a penalty not in excess of $25,000 whenever it appears that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceeding is frivolous or groundless. A position maintained by the taxpayer is "frivolous" where it is "contrary to established law and unsupported by a reasoned, colorable argument for change in the law." Williams v. Commissioner, 114 T.C. 136, 144 (2000) (quoting Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986)). This proceeding was petitioners' first appearance before this Court. Respondent first raised the penalty motion at the hearing. In view of the circumstances of this case and the nature of petitioners' RFRA arguments, we shall deny respondent's motion and we shall not impose the penalty. Nevertheless, we place petitioners on notice that if petitioners institute or maintain a proceeding with frivolous arguments in the future, this Court may impose such a penalty.

We have considered all of petitioners' arguments and contentions, and, to the extent not discussed above, conclude they are irrelevant and/or without merit.

To reflect the foregoing,

<u>An Appropriate Order and</u>

<u>Decision Will Be Entered</u>.